# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE LAVELL KIRKSEY,

                Plaintiff,

v.

S. STAEVENS, HOHENEVER, and
KARINA L. DORROW-STEVENS,

                Defendants.

Case No. 20-CV-1364-JPS

**ORDER**

      Plaintiff Terrance Lavell Kirksey, an inmate confined at Green Bay Correctional Institution ("GBCI"), is proceeding on two Eighth Amendment claims. The first is a claim for deliberate indifference to Plaintiff's serious medical needs, risk of self-harm and/or suicide, against Defendant Hohenever. (Docket #20 at 8). The second is a claim for deliberate indifference to Plaintiff's serious medical needs against Defendants Nurse Staevens and Karina L. Dorrow-Stevens. (*Id.*) Before the Court are Plaintiff's motion for an injunction or temporary restraining order ("TRO"), (Docket #4), and motion for a preliminary injunction, (Docket #7). For the reasons below, the motions will be denied.

      The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) plaintiff has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) plaintiff will likely suffer irreparable harm in

the absence of preliminary relief. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974 F.3d at 818 (citing *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of prisoner litigation, the scope of the Court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage")(internal quotation and citation omitted).

In Plaintiff's first motion for an injunction or TRO, he states that he is not being treated for his medical issues and requests a transfer from GBCI. (Docket #4). Specifically, Plaintiff states that on August 24, 2020, he told GBCI staff who were dispensing medication that he was going to self-harm. (*Id.* at 1). Apparently, the GBCI staff Plaintiff notified ignored him. (*Id.*) Plaintiff did self-harm that day by repeatedly hitting his head on the

cell wall, and he "never received [] medical treatment or attention and [was] placed back in the same cell" even though he had a head injury that was not treated. (*Id.*) Plaintiff states that his life is in danger because he is not being treated, he has had prior concussions, and head trauma can be fatal. (*Id.* at 1–2). Further, Plaintiff states that he has self-harmed again, by cutting himself, and was not seen by a medical professional. (*Id.* at 2). Plaintiff seeks to be transferred out of GBCI because he is not receiving proper medical care there. (*Id.* at 2–3). Plaintiff does not provide any supporting evidence for his motion beyond his own declaration that what he says is true. (*Id.* at 2–3).

In his second preliminary injunction motion, Plaintiff describes the August 24, 2020 incident, further stating that he has continued to self-harm, he is not being treated for his mental health issues, and his complaints are being blocked by the GBCI administrative staff. (Docket #7 at 1–4). Plaintiff attached 68 pages of exhibits (the "Exhibits") in support of his motion. (Docket #7-1). The Exhibits contain inmate complaints and requests filed by Plaintiff; responses by GBCI staff; medical reports; and letters to Plaintiff from the Wisconsin Department of Corrections ("DOC") regarding his complaints. (*Id.*) However, Plaintiff's second motion fails to state what relief he is seeking. *See* (Docket #7).

Plaintiff states that he was ignored by staff when he told them he was going to self-harm on August 24, 2020. (*Id.* at 1–2). Plaintiff hit his head on the cell wall, which resulted in visible injuries of lumps or knots on his forehead. (*Id.* at 2). A social worker saw the lumps and informed security and medical. (*Id.*) Plaintiff was escorted to the Health Services Unit ("HSU") to receive medical treatment, which he never received because he was "kicked out after a officer threw a roll of tissue" at him. (*Id.*) When Plaintiff

was being escorted back to his cell, he told the officers that he was going to self-harm again. (*Id.*) Plaintiff states that the Psychological Services Unit ("PSU") was never notified and he was never placed on observation, despite his threat of self-harm. (*Id.*)

Plaintiff alleges that he heard Defendant Dorrow-Stevens, a PSU employee, in the cell hall, but she ignored him when he yelled for her. (*Id.*) He also alleges that Defendant Dorrow-Stevens lied and said she was not in the institution at the time the incident occurred. (*Id.*) Plaintiff filed a Psychological Services form on August 24, 2020, and he was seen by Defendant Dorrow-Stevens the next day. (*Id.*) On August 25, 2020, Defendant Dorrow-Stevens saw Plaintiff at his cell, and he claims she "came to my cell and lied stating I only had a 'noticeable bump' on my head." (*Id.*) Plaintiff cites to Exhibit 1 as proof that Defendant Dorrow-Stevens attempted to cover the incident up. (*Id.*) A few days later, on August 29, 2020, Plaintiff threatened to self-harm, and then did self-harm, which resulted in him being placed on observation status from August 29, 2020 to September 3, 2020. (*Id.* at 3).

Additionally, Plaintiff provides some information regarding his inmate complaints. (*Id.* at 2–3). Plaintiff addressed his complaint regarding the August 24, 2020 incident to the Secretary of the DOC, which was not accepted and sent back to him on September 11, 2020. (*Id.* at 2). He admits that he did not file an inmate complaint through the inmate complaint review system ("ICRS") regarding the August 24, 2020 incident until after September 11, 2020. (*Id.*) His inmate complaint was rejected as untimely, and Plaintiff appealed. (*Id.* at 2–3). Plaintiff also claims that his complaints are being blocked by the administration at all levels. (*Id.* at 3).

Further, Plaintiff avers that the harms he has suffered are "extremely sadistic," and he fears that he will be retaliated against by certain staff members. (*Id.* at 3). Plaintiff states that he is not safe at his current institution and that "medical, security, phychological services are doing nothing to treat Plaintiff for the injuries he suffered and still continue[s] to suffer." (*Id.*)

Upon review of the Exhibits (Docket #7-1), the Court finds that Plaintiff does not have a likelihood of success on the merits of his claims. For example, Plaintiff cites to Exhibit 1 as proof that Defendant Dorrow-Stevens attempted to cover up the August 24, 2020 incident. (Docket #7 at 2). Exhibit 1 contains an inmate complaint filled out by Plaintiff on August 26, 2020, a PSU report written by Defendant Dorrow-Stevens regarding her August 25, 2020 clinical interview with Plaintiff, and a Health Service Request ("HSR") written by Plaintiff on August 27, 2020. (Docket #7-1 at 1–6). However, Exhibit 1 demonstrates that Defendant Dorrow-Stevens performed a clinical interview with Plaintiff on August 25, 2020 regarding his mental state and asked him about the incident on August 24, 2020. (*Id.* at 4). During the interview, Plaintiff told Defendant Dorrow-Stevens that he had no current thoughts of self-harm and that he did not need help from PSU that day. (*Id.*) The report also shows that Defendant Dorrow-Stevens looked into the August 24, 2020 incident and found that Plaintiff was "pulled out to see HSU yesterday morning (840am) for a 'noticeable bump' on his head but was removed from the office due to aggressive behavior and inappropriate statements to RN." (*Id.*) Further, the report notes that there is no documentation that PSU was notified regarding the August 24, 2020 incident, and that Defendant Dorrow-Stevens was not in the institution at the time the incident occurred. (*Id.*) Instead of supporting Plaintiff's claim that Defendant Dorrow-Stevens is covering up the August

24, 2020 incident, Exhibit 1 reveals that Defendant Dorrow-Stevens actively looked into the incident after speaking with Plaintiff and reported her findings. (*Id.*)

Additionally, Exhibit 1 shows that Plaintiff was being treated by the PSU and HSU at the time of the alleged incident. (*Id.*) Exhibit 1 also contains an HSR that Plaintiff submitted on August 27, 2020. (*Id.* at 6). In the HSR, Plaintiff wrote that Defendant RN Staevens violated rules when she neglected his head injury and did not provide him with minimal treatment. (*Id.*) The HSU responded to the request, stating that the appointment on August 24, 2020 was ended due to Plaintiff "calling the RN a 'dumb bitch.'" (*Id.*) HSU further advised Plaintiff that if he wants a sick call to let HSU staff know. (*Id.*) The HSR directly contradicts Plaintiff's allegation that he did not receive medical care at HSU because he was "kicked out after a officer threw a roll of tissue" at him. (Docket #7 at 2).

Finally, regarding Plaintiff's allegation that the GBCI administration is blocking his complaints, the Exhibits show that his allegation is simply untrue. Exhibits 2, 3, and 4 contain inmate complaints and requests filed by Plaintiff, responses by GBCI staff, and letters to Plaintiff from the Wisconsin DOC regarding his complaints. (Docket #7-1 at 7–35). They reveal that GBCI is not blocking Plaintiff's inmate complaints and that his inmate complaints are being addressed through the ICRS process. (*Id.*)

In sum, the Court finds that the Exhibits show that Plaintiff is being treated by GBCI staff for his medical and psychological needs and that Plaintiff's inmate complaints are not being blocked by the administration. Therefore, Plaintiff has failed to meet his burden to show that he has some likelihood of success on the merits. Because Plaintiff has failed to meet this threshold burden, the Court need not go into the sliding-scale analysis. *See*

Page 6 of 7
Case 2:20-cv-01364-JPS   Filed 08/18/21   Page 6 of 7   Document 21

*Mays*, 974 F.3d at 818. As Plaintiff cannot show that he has a likelihood of success on the merits the Court will deny both motions.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions for an injunction or restraining order (Docket #4) and for a preliminary injunction (Docket #7) be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of August, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge